**INLAND STEEL BAR CO., Plaintiff,**

v.

**UNITED STATES, Defendant,**

and

**United Engineering Steels, Ltd., Defendant–Intervenor.**

Slip Op. 97–18.
Court No. 93–04–00234.

United States Court of International Trade.

Feb. 10, 1997.

Wiley, Rein & Fielding (Charles Owen Verrill, Jr., Alan H. Price, and Willis S. Martyn, III), Washington, DC, for plaintiff Inland Steel Bar Company.

Frank W. Hunger, Assistant Attorney General of the United States; David M. Cohen, Director, Commercial Litigation Branch, Civil Division, United States Department of Justice (A. David Lafer, Jeffrey M. Telep, Washington, DC); Robert E. Nielsen, Office of Chief Counsel for Import Administration, United States Department of Commerce, Valparaiso, IN, of counsel, for defendant.

Steptoe & Johnson, L.L.P. (Richard O. Cunningham, Sheldon E. Hochberg, William L. Martin, II, and Peter Lichtenbaum), Washington, DC, for defendant-intervenor United Engineering Steels Limited.

Skadden, Arps, Slate, Meagher & Flom (Robert E. Lighthizer and John Mangan) and Dewey Ballantine (John A. Ragosta and Michael R. Geroe) Washington, DC, for amici curiae Domestic Flat Rolled Steel Producers.

## OPINION

CARMAN, Chief Judge:

This case is before the Court following remand to the Department of Commerce ("Commerce" or "Department"), pursuant to this Court's order. *See Inland Steel Bar Co. v. United States, United Engineering Steels, Ltd.,* 936 F.Supp. 1052 (CIT 1996) (order remanding case to the Department of Commerce). Plaintiff challenges Commerce's *Remand Determination: Certain Hot Rolled Lead and Bismuth Carbon Steel Products From the United Kingdom Pursuant to Inland Steel Bar Co. v. United States, Slip Op. 96–134, (CIT Aug. 13, 1996)* (date stamped September 13, 1996) (*Remand Determination*) and urges this Court to remand this matter to Commerce for further consideration and redetermination. Defendant and defendant-intervenor assert Commerce's *Remand Determination* conforms to this Court's remand order and should be affirmed by this Court. The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1581(c) (1988), and for the reasons set forth below affirms the Department's *Remand Determination* finding it supported by substantial evidence on the record and otherwise in accordance with law.

### BACKGROUND

Between 1978 and 1986, the government of the United Kingdom provided subsidies to the state-owned British Steel Corporation ("BSC"). In 1986, BSC and Guest, Keen & Nettlefolds ("GKN"), a privately owned company, formed a joint venture company, United Engineering Steels Limited ("UES"). In return for shares in UES, BSC and GKN each contributed productive units to the joint

venture. BSC contributed its Specialty Steels Business ("SSB") and GKN contributed its Brymbo Steel Works, accounts receivable, cash and inventories.

On May 8, 1992, the Department of Commerce initiated a countervailing duty investigation of "hot-rolled bars and rods of nonalloy or other alloy steel, whether or not descaled, containing by weight 0.03 percent or more of lead or 0.05 percent or more of bismuth, in coils or cut lengths, and in numerous shapes and sizes" manufactured in the United Kingdom. *See Initiation of Countervailing Duty Investigations: Certain Hot Rolled Lead and Bismuth Carbon Steel Products From Brazil, France, Germany, and the United Kingdom,* 57 Fed. Reg. 19,884, 19,885 (Dep't Comm.1992) (initiation notice). Commerce's *Final Determination* stated "a company's sale of a 'business' or 'productive unit' does not alter the effect of previously bestowed subsidies" and concluded "a portion of the pre–1986 subsidies provided to BSC passed through to the Special Steels Business at its new 'home,' UES." *Final Affirmative Countervailing Duty Determination: Certain Hot Rolled Lead and Bismuth Carbon Steel Products From the United Kingdom,* 58 Fed.Reg. 6,237, 6,240 (Dep't Comm.1993) (final determination) (*Final Determination*).

Prior to initial briefing, Commerce requested, and this Court granted, a remand to reconsider the *Final Determination* in light of the privatization analysis developed by the Department in the investigation *Final Affirmative Countervailing Duty Determination; Certain Steel Products from the United Kingdom,* 58 Fed.Reg. 37,393 (Dep't Comm. 1993) (final determination) (*Certain Steel*). Based on *Certain Steel* and the *General Issues Appendix,* 58 Fed.Reg. 37,225 (Dep't Comm.1993), Commerce determined "it [would] no longer assume[ ] that the *entire* amount of subsidies allocated to the productive unit follows it when sold." *Remand Determination: Certain Hot Rolled Lead and Bismuth Carbon Steel Products From the United Kingdom* at 1 (dated Oct. 12, 1993) (*Remand Determination I*).

In reviewing *Remand Determination I,* this Court held "Commerce ... erred as a matter of law and the *Final Determination* as modified by [*Remand Determination I* ] is vacated to the extent Commerce determined previously bestowed subsidies are passed through to a successor company in an arm's length transaction." *Inland Steel Bar Co. v. United States,* 858 F.Supp. 179, 186 (CIT 1994) ("*Inland I*"). This Court's opinion in *Inland I* was reversed and remanded by the United States Court of Appeals for the Federal Circuit in an opinion not citeable as precedent. *See Inland Steel Bar Co. v. United States,* 86 F.3d 1174 (Fed.Cir.1996) ("*Inland II*"). In *Inland II,* the Federal Circuit adopted the reasoning it developed in *Saarstahl AG v. United States,* 78 F.3d 1539, 1544 (Fed.Cir.1996) ("*Saarstahl AG*"), in concluding this Court "erred in holding that *as a matter of law* a subsidy cannot be passed through during an arm's length transaction." Following the Federal Circuit's reversing and remanding the matter, this Court remanded the case to Commerce.

CONTENTIONS OF THE PARTIES

A. *Plaintiff*

Plaintiff's comments on Commerce's *Remand Determination* raise two arguments in support of its request that this Court again remand this matter to the Department of Commerce for further deliberation. Plaintiff's first argument challenging the *Remand Determination* asserts the Federal Circuit's opinion in *Saarstahl AG* "specifically upheld Commerce's original determination which held that the subsidies bestowed on British Steel Corp., and allocated to the Special Steels Business, 'travelled' [sic] with that productive unit when it was sold to United Engineering Steels, Ltd." (Pl.'s Comm. on Remand Determ. ("Pl.'s Comm.") at 1–2.) Plaintiff argues the *Inland II* opinion adopted the Federal Circuit's reasoning in *Saarstahl AG,* which states "Commerce determined that the subsidy survives unless there is evidence that it went elsewhere or was repaid." *Saarstahl AG,* 78 F.3d at 1544. Plaintiff contends that because Commerce's *Remand Determination* "reach[es] a decision contrary to the determination that the Federal Circuit specifically upheld" this Court should decline to affirm the *Remand Deter-*

*mination* and should order Commerce issue a remand determination consistent with *Remand Determination I.* (Pl.'s Comm. at 2–3.)

Plaintiff's second challenge asserts this Court should decline to affirm the *Remand Determination* because it elevates the form of the transaction at issue over the substance. Plaintiff asserts "[t]he Special Steels Division's production continued as it did before the sale to UES using the same equipment, making the same products, with the same workers, etc." (Pl.'s Comm. at 3–4.) Plaintiff's comments state Commerce's determination that BSC's Special Steels Division was a productive unit, and not a corporate person, "is clearly not what this Court intended when it instructed Commerce in the strongest possible terms not to place form over substance." (Pl.'s Comm. at 4.) Plaintiff asserts UES' products are countervailable because a subsidiary is a recipient of subsidies provided to the parent corporation, and when the subsidiary is privatized " 'the privatized entity continues to be, for all intents and purposes, the same entity that received subsidies prior to the privatization.' " (Pl.'s Comm. at 5 (quoting *British Steel plc v. United States,* 924 F.Supp. 139, 157–58 n. 25 (CIT 1996) ("*British Steel II* "), *appeals docketed,* Nos. 96–1401 to –06 (Fed. Cir. June 21, 1996)).)

### B. *Defendant*

In response to plaintiff's challenge, defendant offers two arguments in support of its position that this Court should sustain Commerce's *Remand Determination.* First, defendant argues Commerce properly followed this Court's remand order, noting "Commerce simply may not ignore the lawful orders of a court which has jurisdiction over the instant case and take it upon itself to submit a remand results [sic] not in conformance with the court's directions." (Def.'s Rebuttal to Interested Party Comm. ("Def.'s Comm.") at 2.) Defendant asserts this Court's remand order specifically required Commerce to "make certain determinations regarding productive units in the context of privatization pursuant to the Court's opinions in *British Steel I* and *British Steel II* " and

"that is exactly what Commerce did." (Def.'s Comm. at 2.)

Second, defendant asserts Commerce's *Remand Determination* is in conformity with this Court's determination in *British Steel I* and *British Steel II* that the recipient of a subsidy must be a person or artificial person capable of holding a property interest. *See British Steel II,* 924 F.Supp. at 156; *British Steel plc v. United States,* 879 F.Supp. 1254, 1271–72 (CIT 1995) ("*British Steel I* "), *appeals docketed,* Nos. 96–1401 to –06 (Fed. Cir. June 21, 1996). Defendant states it considers the Court's artificial person requirement "as *the* critical threshold that first must be crossed before any subsequent analysis takes place" and not "simply a question of 'form' that may be summarily ignored regardless of whether the productive unit in question may appear to have some of the attributes of an artificial person." (Def.'s Comm. at 3–4.) Defendant asserts that because "the record in this case is clear that the Special Steels Business was not a legal person, *i.e.,* an artificial person" no further remand is warranted, and Commerce's *Remand Determination* should be affirmed by this Court. (*Id.* at 5.)

### C. *Defendant–Intervenor*

Defendant–Intervenor United Engineering Steels Limited ("UES") raises three arguments in responding to the comments filed by plaintiff. First, UES asserts that "Inland is incorrect in claiming that the Federal Circuit upheld the original [Department of Commerce] determination and that any determinations contrary to the original [Department of Commerce] decision are necessarily in conflict with the Federal Circuit's decision." (Def.–Interv.'s Comm. on Remand Determ. ("Def.–Interv.'s Comm.") at 2.) UES asserts the Federal Circuit did not address the merits of Commerce's determination, but rather it simply reversed this Court's holding that an arm's length sale of a company terminates any remaining competitive benefits from prior subsidies as a matter of law.

Second, UES contends the *Remand Determination* is consistent with this Court's remand order. In making this argument, UES asserts the Court properly recognized subsi-

dies cannot travel with productive units that are unable to receive subsidies. Defendant–Intervenor asserts "[t]he Court's conclusion ... is both a correct statement of the law and consistent with long-standing [Department of Commerce] practice" which takes the position that "untied capital subsidies received by a company continue to benefit the company in their full amount even if a productive unit whose output might have been subject to countervailing duties is closed down." (Def.–Interv.'s Comm. at 4–5.) Additionally, UES notes "the Court did not require the DOC to determine that an unincorporated productive unit could never receive a subsidy," (Def.–Interv.'s Comm. at 5), and indeed that Commerce has in past investigations determined that productive units received "tied" subsidies if " 'the intended use is known to the subsidy giver and so acknowledged prior to or concurrent with the bestowal of the subsidy.' " (Def.–Interv.'s Comm. at 5 (quoting *General Issues Appendix,* 58 Fed.Reg. 37,225, 37,232 (Dep't Comm. 1993)).) In concluding this argument, UES asserts "[g]iven ... the subsidies [received by BSC] were united subsidies, ... the [Department of Commerce]'s factual findings demonstrate that no subsidies were 'received by' the special steels business." (Def.–Interv.'s Comm. at 8.)

Finally, UES argues it was not the recipient of any subsidies because it purchased BSC's Special Steels Business in an arm's length transaction. UES asserts it "paid fair market value for all of its productive assets, just as any unsubsidized company producing steel in the United Kingdom or the United States" and therefore "the [Department of Commerce] was required to determine that UES's production was not subsidized." (Def.–Interv.'s Comm. at 8–9.)

### STANDARD OF REVIEW

In reviewing remand determinations of the Department of Commerce, this Court will sustain Commerce's remand determination unless it is "unsupported by substantial evidence on the record, or otherwise not in accordance with law." 19 U.S.C. § 1516a(b)(1)(B) (1988) (current version at 19 U.S.C. § 1516a(b)(1)(B)(i) (1994)).

### DISCUSSION

This Court's remand order instructed the Department of Commerce, in relevant part, to

(1) define "productive unit"; (2) determine whether a "productive unit" is capable of receiving a subsidy under 19 U.S.C. § 1677(5)(B) (1988), as described in *British Steel plc v. United States,* 879 F.Supp. 1254 (CIT 1995), *appeals docketed,* Nos. 96–1401 to –06 (Fed. Cir. June 21, 1996), and *British Steel plc v. United States,* 924 F.Supp. 139 (CIT 1996), *appeals docketed,* Nos. 96–1401 to –06 (Fed. Cir. June 21, 1996); (3) determine whether British Steel Corporation's Special Steels Business was a "productive unit" capable of receiving a subsidy; (4) ...; (5) if Commerce determines the Special Steels Business was not a "productive unit," was not capable of receiving a subsidy, or that subsidies were not "provided to" the Special Steels Business, determine whether the parties discounted the purchase price at issue to account for any countervailing duty liability otherwise attributable to British Steel Corporation and, if so, whether this results in countervailing duty liability for United Engineering Steels Limited....

*Inland Steel Bar Co. v. United States,* 936 F.Supp. 1052 (CIT 1996) (order remanding case to the Department of Commerce).

On September 13, 1996, Commerce issued its *Remand Determination.* In responding to the first issue raised by this Court's remand order, Commerce defined a productive unit as "an operation capable of '(1) generating sales and (2) operating independently.' " *Remand Determination* at 2 (citing *General Issues Appendix,* 58 Fed.Reg. at 37,268). This definition is consistent with Commerce's past statements defining a "productive unit", and the parties do not contest it. The Court finds Commerce's definition of "productive unit" is supported by substantial evidence on the record and is otherwise in accordance with law.

In responding to the second issue posed by this Court's remand order, whether a "productive unit" is capable of receiving a subsidy under 19 U.S.C. § 1677(5)(B) (1988), Com-

merce's *Remand Determination* states "[b]ecause *the productive unit in question* is not a 'person or artificial person, ... capable of holding a property interest ...,' we conclude, pursuant to the Court's opinions in *British Steel I* and *British Steel II*, that the productive unit is not capable of receiving a subsidy." *Remand Determination* at 3 (emphasis added). The Court notes this statement is not responsive to the issue of whether a productive unit is capable of receiving a subsidy, and that the *Remand Determination* includes no further language addressing the issue of whether a productive unit can receive a subsidy. The *Remand Determination* essentially repeats its answer to the second issue in responding to the third issue raised in the remand order, whether BSC's Special Steels Business was a "productive unit" capable of receiving a subsidy. The *Remand Determination* states "pursuant to *British Steel I* and *British Steel II*, Commerce must conclude that British Steel Corporations's [sic] Special Steels Business was not a 'productive unit capable of receiving a subsidy.'" *Remand Determination* at 4.

Plaintiff argues Commerce's *Remand Determination* improperly elevates form over substance in concluding that the Special Steels Division is not an entity capable of receiving a subsidy. The Court reads plaintiff's comments to raise two different arguments relating to the *Remand Determination* placing form over substance. First, plaintiff argues that but for Commerce's determination that BSC's Special Steels Business is a productive unit, it would have determined a subsidy traveled with the SSB to UES. Specifically, plaintiff's comments state "because the Special Steels Divisions was [determined to be] a productive unit, not a corporate person, Commerce reached a negative determination—a decision that would have been affirmative if the Special Steels Division had been an incorporated subsidiary instead of a productive unit." (Pl.'s Comm. at 4.) Plaintiff's comments later assert "[t]he sale of a productive unit is functionally identical to the sale of a[n] [incorporated] subsidiary." (*Id.* at 5.)

■ In advancing this argument, plaintiff's comments incorrectly assert Commerce's determination that BSC's Special Steels Division received no subsidy necessarily followed from its determination the Special Steels Division is a productive unit. Neither this Court's remand order nor any of its past decisions provide any basis for plaintiff's argument that productive units are incapable of receiving subsidies. Indeed, this Court explicitly has stated the opposite. This Court's *British Steel I* opinion states "a subsidy cannot be provided to a 'productive unit' *or* 'travel' with it *unless the 'productive unit' is* itself an artificial person *capable of receiving a subsidy.*" *British Steel I*, 879 F.Supp. at 1271–72 (emphasis added). Therefore, the Court finds plaintiff's comments asserting Commerce determined no subsidy was received by the Special Steels Business because it was found to be a productive unit are misplaced.

Second, plaintiff's comments note that "Commerce states that it was compelled to reach this result in light of dicta in *British Steel I* and *British Steel II* stating that a subsidy recipient 'must be a person or artificial person, such as a corporation.'" (Pl.'s Comm. at 3 (quoting *British Steel II*, 924 F.Supp. at 156, 158; *British Steel I*, 879 F.Supp. at 1271).) The Court interprets plaintiff's inclusion of this statement as arguing this Court's opinions in *British Steel I* and *British Steel II* force Commerce to place form over substance by requiring Commerce to find that only entities which are "'a person or artificial person, such as a corporation'" are capable of receiving subsidies. (*Id.*)

■ This Court has expressed consistently its concern that Commerce's methodologies and investigations not place form over substance in reaching final determinations. *See, e.g., British Steel PLC v. United States*, 936 F.Supp. 1053, 1065–66 (CIT 1996) ("*British Steel IV*"), *appeals docketed and consolidated*, 97–1082 (Fed.Cir. Nov. 13, 1996) (rejecting Commerce's statement that opinions issued by the Court of International Trade establish "the fundamental premise ... that the form of the privatization transaction (*i.e.*, asset sale versus stock sale) is the principal factor to be examined when determining the Department's authority to impose counter-

vailing duties on a post-privatization entity"); *British Steel II*, 924 F.Supp. at 157 (stating the requirement that before a countervailable subsidy exists in a privatization context it must be received by a person or artificial person capable of holding a property interest "is not a distinction based solely on the form of the privatization transaction.... [F]orm is subordinate to substance."); *British Steel I*, 879 F.Supp. at 1277 (stating that foreign governments cannot utilize the form of a privatization transaction to evade assessment of countervailing duties because "Commerce, using its considerable expertise and insisting that such transactions be based upon good faith commercial considerations, should be able to ferret out sham transactions").

▮▮▮▮ In its *British Steel I* opinion, this Court stated the statute's language concerning the provision of a subsidy "implies that the recipient of a subsidy must be a person or artificial person, such as a corporation carrying on a specific enterprise or industry, capable of holding a property interest such as a subsidy." *British Steel I*, 879 F.Supp. at 1271. A significant portion of this statement, and one that is omitted from the quote in plaintiff's comments, is that in order for a countervailable subsidy to exist, it must be allocated to an entity *"capable of holding a property interest"*, *i.e.*, an entity that is capable of receiving and absorbing a subsidy. This Court again emphasizes that a key issue in determining whether a countervailable subsidy exists is whether the entity in question is organized in such a manner that it is capable of receiving and absorbing a property interest, and therefore is capable of receiving a countervailable subsidy.

As this Court has noted previously, Congress has established rules for the Department of Commerce's conduct of countervailing duty investigations. The statute states

**(B) Special Rule**

In applying subparagraph (A), the administering authority, in each investigation, shall determine whether the bounty, grant, or subsidy in law or in fact is provided to a specific enterprise or industry, or group of enterprises or industries....

19 U.S.C. § 1677(5)(B) (1988); *see also* 19 U.S.C. § 1671(a)(1)(B) (1988) (discussing the administering authority's determination of whether a relevant entity "is providing, directly or indirectly, a subsidy"). A plain reading of the statute's language reveals that a subsidy must be "provided to" a recipient, and that recipient must be "capable of holding a property interest" in order to receive and absorb the subsidy. *See* 19 U.S.C. § 1677(5)(B) (1988); *British Steel I*, 879 F.Supp. at 1271. Indeed, all parties in the British Steel litigation agreed at oral argument that in order to receive a subsidy, the recipient must be a person or artificial person capable of holding a property interest. *See British Steel II*, 924 F.Supp. at 156 ("As parties, including the government, conceded at oral argument in this proceeding, '[t]his implies that the recipient of a subsidy must be a person or artificial person, such as a corporation carrying on a specific enterprise or industry, capable of holding a property interest such as a subsidy.'" (quoting *British Steel I*, 879 F.Supp. at 1271)).

▮▮ While the corporate form of an entity does affect the substantive determination in this case, the Court believes its past statements on this issue make clear that in determining whether a previously bestowed subsidy is passed through in an arm's length transaction, a central issue is the entity's capability to receive and absorb a subsidy. Therefore, the crucial determination is whether BSC's Special Steels Business was organized in such a manner that it was capable of receiving and absorbing a subsidy which could have traveled to UES when it purchased BSC's Special Steels Business. While form plays an important role in the decision, the decision is built on the substantive determination of whether the SSB is capable of receiving a subsidy, not whether the SSB is a productive unit.

This Court is concerned and sod *British Steel II*. This Court believes part of the confusion may result over a failure to differentiate between the receipt of a subsidy and the allocation of a subsidy once it is received. This Court once again emphasizes a statement it made in *British Steel I*

Commerce has consistently maintained that it does not measure the effects of

subsidies once they have been determined by Commerce. In other words, subsequent events are irrelevant. This Court, for the purposes of this proceeding, has no quarrel with that practice. *The question confronting the Court is not the measurement of the subsidies, but the question of the location of the subsidies after privatization has taken place. . . . It is not the effect upon the recipient that is presented by the general issue of privatization, but the identity of the recipient.*

*British Steel I*, 879 F.Supp. at 1273–74 (emphasis added) (footnotes omitted). As this Court noted in *British Steel II*, a presumption which

create[s] a blanket rule that subsidies always or never pass with anything 'privatized' regardless of the manner and extent to which the 'privatization' occurs, can lead to a direct violation of the plain statutory language requiring that a subsidy must be 'provided to a specific enterprise or industry, or group of enterprises or industries.'

*British Steel II*, 924 F.Supp. at 158. In sum, the Court agrees with the result reached by the Department of Commerce in the *Remand Determination.*

While Commerce's *Remand Determination* fails to answer the general question of whether a productive unit is capable of receiving a subsidy under 19 U.S.C. § 1677(5)(B) (1988), the Court finds the *Remand Determination*'s conclusion that the Special Steels Business is a "productive unit", and that "[the Special Steels Business] is not a 'person or artificial person,'" and therefore that "[British Steel Corporation's Special Steels Business] is not capable of receiving a subsidy," *Remand Determination* at 3 (footnote omitted), to be supported by substantial evidence in the record and otherwise in accordance with law.

With respect to the fifth and last issue posed on remand, whether the parties discounted the purchase price of British Steel Corporation's SSB to account for any countervailing duty liability attributable to BSC, Commerce concluded "[t]here is no information on the record which indicates whether parties discounted the purchase price at issue to account for any countervailing duty liability potentially attributable to the production of the Special Steels Business of British Steel Corporation" and therefore "there is no countervailing duty liability attributable to the production of the subject merchandise by United Engineering Steels Limited." *Remand Determination* at 4, 5. Based on the findings made in the *Remand Determination*, Commerce determined the countervailing duty rate of 4.59% *ad valorem* established in the *Final Determination*, as modified by *Remand Determination I*, must be revised to a rate of 0.0% *ad valorem*. The Court finds this conclusion appropriate given there is no record evidence supporting different findings, and finds the conclusion is otherwise in accordance with law.

Finally, this Court rejects plaintiff's contention that the *Remand Determination* is "plainly inconsistent with the law of this case." (Pl.'s Comm. at 2.) This Court reads the majority opinion in *Inland II*, holding that previously bestowed subsidies cannot be disqualified as a matter of law from passing through to a subsequent transferee in an arm's length transaction, as consistent with this Court's opinion in *Inland I*. Each case must necessarily be determined by its own facts. Additionally, this Court notes the *Inland II* majority opinion does not specifically uphold the Commerce Department's initial determination. Accordingly, the Court finds Commerce's *Remand Determination* is not inconsistent with the Federal Circuit's majority opinion in *Inland II*.

## CONCLUSION

The Court finds the *Remand Determination*'s conclusions that "pursuant to *British Steel I* and *British Steel II*, Commerce must conclude that British Steel Corporations's [sic] Special Steels Business was not a 'productive unit capable of receiving a subsidy,'" *Remand Determination* at 4, and that "there is no countervailing duty liability attributable to the production of the subject merchandise by United Engineering Steels Limited," *Remand Determination* at 5, are supported by substantial evidence on the record and are otherwise in accordance with law. Accordingly, plaintiff's challenge is rejected and

Commerce's *Remand Determination* is sustained.

## JUDGMENT ORDER

This case having been duly submitted for decision and this Court, after due deliberation, having rendered a decision herein; now, in conformity with said decision, it is hereby

**ORDERED** that plaintiff's challenge to the United States Department of Commerce's *Remand Determination: Certain Hot Rolled Lead and Bismuth Carbon Steel Products From the United Kingdom Pursuant to Inland Steel Bar Co. v. United States, Slip Op. 96–134, (CIT Aug. 13, 1996)* (date stamped September 13, 1996) (*Remand Determination*) is rejected; and it is further

**ORDERED** that the *Remand Determination* is sustained; and it is further

**ORDERED** that this case is dismissed.